

U.S. Department of Justice

Channing D. Phillips
Acting United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

August 19, 2021

**VIA EMAIL**
Robert Feitel, Esq.
Eugene Ohm, Esq.

Re:  *United States v. Mark Blue and Nick Savoy*
*Case No.* 21-cr-221 (CJN)

Dear Counsel:

To the extent that the D.C. Department of Forensic Sciences (DFS) played any role in this case, we are writing to provide you with the following information related to DFS.  This information falls broadly into the following categories:  (1) materials related to the government's investigation of alleged misconduct by employees of DFS and the Metropolitan Police Department (MPD); (2) correspondence related to the government's investigation of a scientific error by DFS's Firearms Examination Unit (FEU) and the government's subsequent request that DFS participate in an independent audit process; (3) materials related to the government's independent audit, including documents the government successfully compelled DFS to disclose in November 2020, culminating in the suspension of DFS's accreditation on April 2, 2021, and its withdrawal on May 2, 2021; (4) materials related to an ongoing DC-OIG criminal investigation of DFS opened on December 3, 2020; (5) Quality Corrective Action Reports (Q-CARs) and other quality assurance materials generated by DFS, and provided to the government; (6) an ongoing internal DFS investigation of 10 members of the Crime Scene Sciences Division; (7) materials related to a DFS case review and audit of selected casework of the DFS Latent Fingerprints Unit (LFU); and (8) e-mails of DFS employees collected in bulk by investigators.

The materials themselves are available for download from USAfx at "DFS Disclosures."[1] Please note that the folders on USAfx are organized by topic and a copy of the index is available on USAfx.  If the government comes into possession of additional materials related to DFS after the date of this letter, the government may make those materials accessible to you by uploading the materials to USAfx and adding them to the index available on USAfx.  You will be notified

---

[1] Preferably using a Chrome browser, please navigate to the following link:
https://usafx.app.box.com/folder/123205578212?s=hor73g4hccr4y56a17ui2s827sx7vf9o

of the new materials via a message from Box.com, and should access the USAfx folder once you receive this message to obtain the new materials. The index reflects the date that materials were uploaded to USAfx.

If you require assistance accessing the materials, please contact the undersigned AUSA.

1. **Materials Related to the Government's Investigation of Alleged Misconduct**

   A. *FPC Investigation, October 2019-January 2020*

In September 2019, the United States became aware of allegations of misconduct by personnel at DFS[2] and MPD, including DFS's former Acting Deputy Director Karen Wiggins[3]; Unit Manager Jonathan Pope of the DFS FEU; FEU Firearms Examiner Steven Chase; other DFS employees who are or were affiliated with the FEU; and Unit Manager Alesia Wheeler-Moore of the DFS Crime Scene Sciences Unit (CSSU), who previously served as a lieutenant in MPD's Crime Scene Investigations Division (CSID). As described more fully in the materials being provided, the allegations included concerns about DFS operations related to the firearms examination and verification procedures used by the FEU during April and May 2017, in

---

[2] Except as explained in footnote 4, to the best of the government's knowledge, during most times relevant to the government's investigation, DFS's publicly available organizational chart reflected that the Deputy Director reported to the Director. During those times, the Deputy Director oversaw three divisions: the Forensic Science Laboratory Division (FSLD), the Crime Scene Sciences Division (CSSD), and the Public Health Laboratory Division (PHLD). The FSLD, in turn, contained five units: the Forensic Biology Unit (FBU), the Firearms Examination Unit (FEU), the Latent Fingerprint Unit (LFU), the Digital Evidence Unit (DEU), and the Materials Analysis Unit (MAU). The Crime Scene Sciences Division (CSSD) contained two units: the Crime Scene Sciences Unit (CSSU) and the Central Evidence Unit (CEU). The PHLD also had five units: the Accessioning Unit (AU); the Bioterrorism & Molecular Diagnostics Unit (BMD), the Biomonitoring & Analytical Chemistry Unit (BAC), the Microbiology Unit (MU), and the Immunology & Virology Unit (IVU).

[3] Former DFS Acting Deputy Director Wiggins retired on December 29, 2019. It is believed that Wiggins assumed the role of Acting Deputy Director in or about June 2019; became the Director of the FSLD at some point in 2015; and, before that, was hired in 2013 to be the DFS Deputy Director of Quality Assurance. Former Acting Deputy Director Wiggins generally is believed to have had oversight responsibilities over the FSLD, CSSD, and PHLD, and their respective units. It is the government's understanding that, although Wiggins concurrently held the position of Director of the FSLD until November 10, 2019, there also was an Acting Director of the FSLD. On November 10, 2019, the Acting Director of the FSLD became its permanent director. The Director of the FSLD—who was not a subject of the government's investigation—generally is believed to have oversight roles of the FBU, FEU, LFU, DEU, and MAU.

It is the government's understanding that following the Acting Deputy Director Wiggins's retirement, DFS's Director assumed responsibility for the Deputy Director's portfolio pending the selection of Wiggins's replacement. Additionally, the government believes that DFS moved the DEU outside the FSLD into a new Cyber Operations Section (COS) joined with the Forensic Technology Unit (FTU). It also appears that DFS eliminated the MAU and made additional organizational modifications related to the PHLD that are not relevant to this disclosure.

particular, and that DFS and MPD officials whitewashed the allegations and concealed them from the United States Attorney's Office (USAO).

On October 8, 2019, in partnership with the D.C. Office of the Inspector General (DC-OIG) and the Federal Bureau of Investigation (FBI), the Fraud and Public Corruption Section (FPC) of the USAO's Criminal Division initiated a formal investigation into the allegations.  In the course of its investigation, the government conducted interviews of more than a dozen people—some more than once—and obtained documents and e-mails from current and former DFS and USAO personnel. The government concluded its investigation on January 31, 2020, and, on the same day, sent a cover letter and a 31-page report of its findings and recommendations for additional inquiry and corrective action to DC-OIG (the "January 31, 2020, Report of Referral"). On May 4, 2020, the USAO contacted DC-OIG to determine the current status of the USAO's referral. DC-OIG informed the USAO that, on May 5, 2020, it closed its criminal investigation and opened a new administrative case based on the USAO's referral.

The government is providing a copy of the January 31, 2020, Report of Referral along with the primary source materials related to its investigation and an index of the primary source materials.

In connection with its investigation, the government obtained a total of approximately 600,000 pages of e-mails and attachments (after removing collected duplicates) from the accounts of five current and former DFS employees.  The time period involved in the collection generally ranged from between January 2016 and October 2019, although the exact time period collected for each employee may differ.  These employees whose e-mails were collected are Karen Wiggins, Jessica Beyer, Jonathan Pope, Deion Christophe, and Steven Chase.  This collection is bulk in nature, is not limited to e-mails discussing the events underlying the matter under investigation, and may contain sensitive personal or juvenile case-related information. Those e-mails listed in the index of the primary source materials that accompanied the January 31, 2020, Report of Referral – i.e., the e-mails which were identified through applicable searches as relevant to the criminal investigation – are available on USAFx.  As discussed below in Section 8, the e-mails will be made available to you in a searchable database with a protective order.

B.  *Allegations that DFS General Counsel Felt Pressured by Director to Lessen Discipline on Employees and Contemporaneous Changes to DFS Chain-of-Custody Recording Practices*

During the course of its 2019-2020 investigation of DFS, the United States also became aware of allegations that, after the USAO notified DFS in 2017 that it no longer was willing to sponsor a DFS crime scene scientist (hereinafter "DFS Technician D.M.") as an affiant or witness ("do not sponsor"), DFS's former General Counsel felt pressure from DFS's Director, Dr. Jenifer Smith, to avoid other situations in which the USAO would not sponsor DFS employees by lessening the discipline imposed on DFS employees.

On or about August 18, 2017, the USAO notified DFS that it no longer was willing to sponsor the crime scene scientist because of a disciplinary matter in which DFS found both that the employee made a false statement to a supervisor regarding the employee's processing of a firearm and that the employee repeated that false statement during an administrative investigation by DFS into the matter.

Based on information contained in DFS Technician D.M.'s suspension documents, there was evidence supporting disciplinary charges that

On 03/25/2017, while on duty, [DFS Technician D.M.] knowingly and willfully reported false or misleading information, or purposely omitted material facts to a supervisor. (False Statements, 6B DCMR 1605.4(b)(4)); and

On 4/7/2017, while on-duty, [DFS Technician D.M.] knowingly and willfully reported false or misleading information, or purposely omitted material facts to supervising management officials. (False Statements, 6B DCMR 1605.4(B)(4)).

The charges arose from statements [DFS Technician D.M.] made regarding the handling of a firearm recovered from an ADW scene. As indicated in [DFS Technician D.M.]'s suspension package:[4]

On March 1, 2017, [DFS Technician D.M.] failed to follow instructions as it relates to handling and processing evidence. [DFS Technician D.M.] failed to use appropriate Personal Protective Equipment (PPE) and evidence packaging in bringing a firearm into the Central Evidence Unit for rendering safe by the Firearms Examination Unit (FEU). The use of one glove, no face mask and no cardboard box or packaging for the firearm rendered it unable to be processed in the chem lab. The evidence was further contaminated when it was placed on top of a CSS go-bag outside of CEU room 1149 and again when placed into the firearm safe room 1137 without being inside of a box. (Failure or Refusal to Follow Instructions, 6B DCMR 1605.4(d)(1) – Negligence, including the careless failure to comply with rules, regulations, written procedures or proper supervisory instructions.)

Also on March 1, 2017, [DFS Technician D.M.] failed to follow DFS safety protocol in the handling of a potentially loaded firearm. [DFS Evidence Technician D.M.] brought the firearm to CEU to place in the firearm safe in room 1137 and the firearm was neither in a box nor pointed in a safe direction. (Safety and Health Violations, 6B DCMR 1605.4(i)(4) – Failure or refusal to observe and/or enforce safety and health regulations or to perform duties in a safe manner.)

The false statements determinations relate to statements made about the handling of this weapon on March 1, 2017. On March 25, 2017, based on a written description, [DFS Technician D.M.] told Kristi Stone, a Crime Scene Sciences Division Supervisor:[5]

On 03/01/2017, [DFS Technician D.M.] processed the scene of an ADW and was unable to render the weapon safe. She packaged it in a long-gun box and transported it to CFL. Upon arrival, [DFS Technician D.M.] generated the proper information and barcodes using LIMS and then requested the assistance of [name omitted] of CEU for placement of the weapon in the safe. [DFS Technician D.M.] attempted to place the packaged weapon in the safe but found that the box could not fit. She then took the weapon out of the box and placed it in the safe to secure

---

[4] The reprimand packet related to the Failure or Refusal to Follow Instructions and Safety and Health Violations.

[5] This is quoted from [DFS Technician D.M.]'s suspension package.

it. [DFS Technician D.M.] placed the packaging (long-gun box), complete with barcode stickers, beside the safe. [DFS Technician D.M.] requested that [name omitted] send out an email regarding the loaded weapon to firearms; [DFS Evidence D.M.] was cc'd on said email.

On 03/01/17, [DFS Technician D.M.] checked the COC for the weapon and found that it had been returned by firearms (no email had been sent to inform her of the weapon being cleared). [Name omitted] of CEU retrieved the evidence and presented it to [DFS Technician D.M.] with no packaging; [Name omitted] was not wearing gloves at the time. [DFS Technician D.M.] observed that the barcodes were present on both sides of the frame of the weapon. At this point, she contacted K. Stone for guidance.

DFS Technician D.M. provided a similar statement to the DFS General Counsel's Office on April 7, 2017. Security camera footage from the night of March 1, 2017, however, contradicted significant aspects of DFS Technician D.M.'s statement, including her statement that she had brought the weapon into CEU packaged in a box.

The following is a summary based on a review of certain USAO/DFS emails that may be related to DFS's response to USAO's decision not to sponsor DFS Technician D.M. as a witness or affiant in August 2017. The external USAO email communications with DFS relied upon, in part, for the summary are available on USAFx (USAO-012536-012575, USAO-012819-012822).[6]

As noted, on August 18, 2017, USAO notified DFS by letter that it would not sponsor DFS Technician D.M. as an affiant or witness. Based on a review of internal communications, on or about September 6, 2017, the USAO learned from the receipt of DFS paperwork that DFS Technician D.M. had performed work on two cases, specifically an August 31, 2017 sounds of gunshots (CCN 17-150-392)[7], and July 29, 2017 CPWL, (CCN 17-129-906), for which DFS Technician D.M. appears to have done processing work on or about August 9, 2017. DFS Technician D.M.'s work in one of these cases occurred after the issuance of the August 18, 2017 Letter referenced above. On September 7, 2017, USAO notified DFS's General Counsel of these two reports, and stated via e-mail:

If there is no other witness to the collection and processing of evidence by [DFS Technician D.M.], we will not be able to use such evidence in any subsequent trial. This obviously creates the risk that we may have to dismiss a criminal matter if [DFS Technician D.M..] is the only witness to the collection and processing of critical evidence.

In response to this notification, DFS's General Counsel notified USAO that she had a meeting scheduled with DFS Director Jenifer Smith, Mark Tuohey, of the Mayor's Office of Legal Counsel, and an official from the Metropolitan Police Department "about next steps and [would] use the information below in our discussion." DFS General Counsel Raj subsequently notified the USAO, on or before September 26, 2017, that DFS Technician D.M. had been taken off of case

---

[6] These may include internal DFS communications that were forwarded to this Office.

[7] The DFS crime scene paperwork indicates that the assigned MPD detective "reported that this case is potentially linked to an ADW-Gun on August 30, 2017, CCN 17-150-408."

work.[8]  At this time, we are not aware of any information that DFS Technician D.M. worked on any other cases besides CCN 17-150-392 after the USAO informed DFS that it would not sponsor DFS Technician D.M.'s testimony.  We are also not aware of any information that DFS sent DFS Technician D.M. to a homicide crime scene or asked DFS Technician D.M. to work on evidence related to a homicide after August 18, 2017.  We have inquired of DFS whether DFS Technician D.M. was sent to or asked to do work on any additional cases after August 18, 2017.

During the same time frame, the USAO became concerned that DFS may have changed its chain of custody practices in LIMS as it relates to the movement of evidence in the Central Evidence Unit (CEU), to include only location movement, and not the name of each individual that moved the evidence. DFS emails show that on August 24 and 25, 2017, Troy Kelly, Director of Crime Scene Sciences at DFS, inquired of other DFS employees whether DFS's LIMS system "would allow for the ability to support the name of individual [sic] and location as an entry (Troy CEU Storage only)?" In this same email, Mr. Kelly stated,

> Why:  The USAO is concerned that by not reflecting (directly) on the document they see, the Defense may use this as a tool to get around the case.  If we can put a name of the individual with the storage location, we can support both concerns:
> 1.    Who took the box from the said owner to place it on the shelf (not custody)
> 2.    Location it went from said owner to storage (Storage only CEU)

*See id.*[9]  On August 30, 2017, Mr. Kelly emailed USAO with a proposed change in LIMS to address the USAO concerns.  After USAO indicated the "changes seem fine to us," Mr. Kelly wrote back on August 30, 2017, at 11:45 a.m., stating:

> I have ran this idea by Dr. Smith.  She stated we will need to stick with our current processes, not listing out the individuals that are not directly associated with the case(s) - I.e. CEU/CEU.  If USAO believes this is an impact, it might be beneficial to have a meeting with Dr. Smith directly to support as I was only attempting to facilitate a solution in draft.

In addition to the above, the emails indicate that in early November 2017, DFS General Counsel asked AUSA Michael Ambrosino for the email address of the Principal Assistant United States Attorney at the time because Dr. Jenifer Smith, according to the DFS General Counsel,

---

[8] In an email obtained from a search of the emails collected as part of the investigation that resulted in the January 31, 2020, Report of the Fraud and Public Corruption Section's Department of Forensic Sciences Investigative Findings, Dr. Jenifer Smith asked Karen Wiggins on September 14, 2017: "Can you ask Abdel to put together a bullet list of what he needs [DFS Technician D.M.].- to do. Please add any tasks you need support on.  Also will she report to him or you?  I thought about what u said and think it is best to move her.  How would you accommodate if we needed to let her work her midnight shift? Want to get this ready today so need it by noon."

[9] This email, and several other internal DFS emails between August 25 and 28, 2017, were forwarded to the USAO.

wanted to talk about the *Lewis* list.  A meeting was eventually scheduled for December 4, 2017, at the USAO.[10]

On at least two separate occasions in 2017, including during the meeting on December 4, 2017, Director Smith sought an explanation for, and reconsideration of, the USAO's decision not to sponsor the crime scene scientist.[11]  In particular, Director Smith requested that the USAO give the employee another chance so that the employee could continue to testify in criminal cases prosecuted by the USAO.  After considering Director Smith's arguments, the USAO did not change the employee's designation.  After this meeting, it appears the USAO believed that DFS Technician D.M. remained separated from case work. Subsequently, DFS's then-General Counsel told AUSA Michael Ambrosino, Special Counsel for DNA and Forensic Evidence Litigation, that Director Smith criticized her for informing the USAO about the employee's conduct, including the employee's false statements.

Although, during her November 21, 2019, interview with DC-OIG and FPC, DFS's former General Counsel generally recalled documenting employee issues to lessen the discipline to avoid the USAO's do not sponsor designation, she was unable to identify any specific instances in which she had done so and stated that she would never change the facts of an internal investigation and never found Director Smith's actions or requests to be unethical. (FPC-00091)

Since the former General Counsel's departure from DFS on or about November 1, 2019, DFS has notified the USAO of a number of disciplinary matters that DFS had not previously disclosed or identified for disclosure in response to requests for *Giglio* information by the USAO.[12]  DFS imposed discipline in those matters between February 2014 and July 2019, in many instances for safety and health violations and failure/refusal to follow instructions.  DFS has indicated that it is reviewing why these matters were not previously disclosed or identified for disclosure, but believes it may have been due to a prior interpretation of DFS's <u>Giglio</u> obligations as it relates to confidential employee information that does not bear on veracity.

Also, in exhibits accompanying a letter to our office dated May 6, 2020 (identified below), DFS produced a two-page email that it described as containing its former General Counsel's "implicit direction to her subordinate to change [a] 'False Statements/ Records'

---

[10] The invitees appear to include Principal AUSA Evangelista, AUSAs Richard Tischner, Michael Ambrosino, and John Cummings, Dr. Smith, Rashee Raj, Herbert Thomas, Mark Tuohey, Jared Evans.

[11] The United States also was notified in November 2017 that Director Smith was angry about the USAO's decision in or about February 2017 not to sponsor DFS Firearms Examiner Daniel Barrett, who retired after DFS discovered errors in his examinations following a failed proficiency test and the discovery of casework errors.  To the best of the government's knowledge, at the time material to FPC's investigation, the only two DFS employees whom the USAO had stated an unwillingness to sponsor were the crime scene scientist and former FEU Firearms Examiner Barrett.

[12] As of January 31, 2020, DFS had notified the USAO of 21 such matters for 17 DFS employees.  It is the United States' understanding that, barring unforeseen circumstances, DFS has completed its review for additional information potentially responsive to prior USAO *Giglio* requests.

disciplinary charge because it is a 'tough one to shake.'" *See* 2020-05-06 DFS Letter to USAO re Alleged Misconduct, at Exhibit 7.[1]

## 2.   Correspondence Related to the Government's Investigation and Request for an Outside Audit

The government is also providing the following correspondence related to the government's investigation, the government's subsequent request that DFS participate in an outside audit process, and the results of the audit (which are discussed in more detail below):

2020-02-13 Letter from Daniel Barrett to AUSA Michael Ambrosino re DFS FEU.pdf

On February 13, 2020, former DFS Firearms Examiner Daniel Barrett sent a letter to AUSA Michael Ambrosino making allegations regarding FEU.

Deputy Mayor Memo 2.14.2020 short version.pdf

On February 14, 2020, DFS sent a letter to the Deputy Mayor regarding the January 31, 2020, Report of Referral responding to its findings.[13]

2020-04-23 Joint USAO-OAG Letter to Dr. Jenifer Smith re DFS Audit (with Attachments).pdf

On April 23, 2020, the USAO and OAG sent a joint letter to DFS seeking DFS's cooperation in an independent audit of DFS that OAG and USAO are sponsoring.

2020-05-06 DFS Letter to USAO re Alleged Misconduct.pdf

On May 6, 2020, DFS sent a letter, with accompanying exhibits, to the USAO regarding the January 31, 2020, Report of Referral and related matters, including accusations of misconduct against its former General Counsel and USAO employees.

2020-05-19 DFS Response to 2020-04-23 Joint USAO-OAG Letter re DFS Audit.pdf

On May 19, 2020, DFS responded to the April 23, 2020, joint USAO-OAG letter by declining to participate in the independent audit and announcing its intention to participate in an audit undertaken by its accrediting body, the American National Standards Institute's (ANSI) National Accreditation Board (ANAB), and a review undertaken by the Science Advisory Board (SAB).

2020-06-15 USAO Response to 2020-05-06 DFS Letter.pdf

On June 15, 2020, the USAO wrote to the Chief Judges of the Superior and U.S. District Courts to update the courts and respond to DFS's May 2020 accusations, attaching the April 23, 2020, letter (and accompanying attachments) and the May 19, 2020, letter as Attachments 1 and 2, respectively.[14]

Executed DOM15 Closeout Report.pdf

---

[13] In March 2020, DFS provided a copy of this letter to the USAO.  The file name of the PDF that DFS provided to the USAO was "Deputy Mayor Memo 2.14.2020 short version"; the USAO is not aware of a longer letter or memo.

[14] On June 16, 2020, the USAO provided a copy of this letter (and accompanying attachments) to the Public Defender Service and representatives from the CJA bar and criminal defense clinics.

On March 5, 2021, DFS issued a report entitled "Departmental Operations Manual 15 Closeout Report of Complaint/Inquiry Review Team Regarding January 7, 2020 Erroneous NIBIN Confirmation Complaint."

2021-03-22 USAO Letter to DC-OIG.pdf
  On March 22, 2021, Acting U.S. Attorney Channing Phillips wrote to DC-OIG to refer the March 18, 2021, Final Audit Report to DC-OIG for investigation. The letter copied the Chief Judges of the Superior and U.S. District Courts and representatives from the defense bar.

2021-03-22 OAG Letter to DC-OIG.pdf
  On March 22, 2021, D.C. Attorney General Karl Racine wrote to DC-OIG to refer the March 18, 2021, Final Audit Report to DC-OIG for investigation.

DFS Letter to Chairperson Allen re Oversight Responses.pdf
  On March 26, 2021, DFS wrote to Chairperson Allen attaching information for DFS's performance oversight hearing. The letter also addressed Dr. Jenifer Smith's understanding regarding USAO and OAG use of FEU.

DC DFS suspension and withdrawal notification.pdf
  On April 2, 2021, ANAB informed DFS that it was "immediately suspending the laboratory's accreditation and initiating the process for withdrawal of accreditation."

## 3. **Materials Related to an Outside Review and Audit of Selected Casework of the DFS Firearms Examination Unit**

  Beginning April 6, 2020, the USAO and OAG asked a team of independent auditors (Bruce Budowle, James Carroll, and Todd Weller) to initiate an audit of DFS.  The auditors were directed to investigate the following: (1) conduct disclosed by DFS to USAO in 2016-2017, including a failed proficiency exam and multiple casework errors (not caught during the verification process); (2) conduct which appears to have been intentionally withheld by DFS management from USAO and OAG, including a failed proficiency exam, policy deviations, and an effort by DFS management to pre-determine the outcome of an investigation into conduct involving policy deviations, at minimum; and (3) discovery in January 2020, through analysis performed by four independently retained firearms experts, that four DFS firearms examiners erroneously connected two homicides by concluding the same gun fired shell casings recovered from both homicide scenes.[15]

  On April 23, 2020, the USAO, along with the Office of Attorney General for the District of Columbia (OAG), formally notified DFS that the government had retained these independent experts to audit DFS's policies and practices focusing, in particular, on the FEU and DFS's quality assurance program. By letter of May 19, 2020, to the USAO and OAG, DFS declined to participate in the independent audit.

  On May 21, 2020, the auditors issued an Interim Report, and on June 4, 2020, an Addendum to that report.  On July 29, 2020, the auditors submitted a proposed audit plan.  On August 9, 2020, the auditors issued a second Interim Report.

---

[15] This third category is discussed further in Section 3(A), below.

As part of their work, the auditors reviewed a variety of source materials including the underlying reports and various correspondence.  The auditors also conducted interviews of the following former DFS employees:  Jessica Beyer, Deion Christophe, Chris Coleman, Brittany Graham, Travis Spinder, Alicia Sandstrom (Vallario), and Michael Mulderig.

As listed in the index, the government is providing the May 21, 2020, Interim Report and accompanying attachments; the June 4, 2020, Addendum and accompanying attachments; the July 29, 2020, proposed audit plan; the August 9, 2020 Second Interim Report; a January 17, 2020 USAO letter to DFS; DFS's letters to the USAO dated January 22, 2020, January 23, 2020, and May 22, 2020; the underlying reports and source materials reviewed by the auditors; and summaries of the interviews, a video recording of the auditors' first interview of Travis Spinder, and materials that the interviewees provided to the auditors.

A.  Materials related to *United States v. Rondell McLeod*, 2017 CF1 9869

In *McLeod*, currently pending in D.C. Superior Court, the United States is engaged in ongoing litigation regarding at least four DFS firearms examiners making false identifications of ballistic evidence.  On May 1, 2020, the defendant filed a motion to dismiss the indictment, arguing that the government placed false ballistics evidence before the grand jury.  On July 15, 2020, the government issued a subpoena to DFS requesting documents concerning those false identifications as well as DFS's subsequent review of those identifications.  DFS retained outside counsel and claimed that certain documents responsive to the subpoena are protected by an evidentiary privilege.  Judge Edelman held a hearing on this issue on August 21, 2020.  On November 10, 2020, Judge Edelman ruled on DFS's privilege assertion and directed DFS to produce 24 documents to the government subject to a protective order that prohibited their disclosure in other cases.  On November 20, 2020, Judge Edelman granted the government's motion to vacate this protective order, and the government has now placed the documents in the "DFS Disclosures" folder on USAfx.  An updated index of these materials is also available for download from USAfx.

Below is an overview of the *McLeod* litigation and these documents.[16]

In *McLeod*, the United States is engaged in ongoing litigation regarding at least four DFS firearms examiners making false identifications of ballistic evidence.  This litigation stems from a series of errors made by DFS firearms examiners concerning the comparison of two items of ballistics evidence from two homicides committed on August 18, 2015, and November 12, 2015:  Item 16 (a 10mm cartridge casing) from the August 18 scene and Item 45 (a 10mm cartridge casing) from the November 12 scene.[17]

The two casings were the subject of a potential correlation through the National Integrated Ballistic Information Network, or "NIBIN" (USAO-003722).  In January 2016, now-former DFS firearms examiner Daniel Barrett identified Items 16 and 45 as being fired from the

---

[16] A more fulsome overview is contained in the Government's Motion to Compel Production of Documents from the District of Columbia Department of Forensic Sciences, filed in *United States v. Rondell McLeod*, 2017 CF1 9869, which is available in the DFS Disclosures folder on USAfx (USAO-008305-36).

[17] DFS later assigned new item numbers to both Items 16 and 45.  Item 16 was later renumbered as Item 1, and Item 45 was later renumbered as Item 22.24.  To avoid confusion, they will be referenced as Items 16 and 45 throughout.

same firearm (USAO-003723), and Barrett's conclusions were verified by now-former DFS firearms examiner Luciano Morales.  In August 2017, now-former DFS contract firearms examiner Alicia Vallario reworked the evidence at the government's request after Barrett failed a proficiency test, and she also identified Items 16 and 45 as being fired from the same firearm "based on firing pin aperture shear marks" (USAO-003724).  Vallario also generated a document showing side-by-side photographs of two cartridge casings, which was hand initialed by both Vallario and her verifier, now-former DFS contract firearms examiner Michael Mulderig (USAO-003736).  Both sets of initials included the term "ID".

At the government's request, in the fall of 2019, DFS sent the ballistics evidence to Travis Spinder, an independent firearms examiner.  On January 4, 2020, Spinder sent the USAO a report reflecting his conclusion that, among other things, the 10mm casings from one scene could be *excluded* as being fired from the same firearm as the 10mm casings from the other scene (USAO-003751-60).  Spinder's conclusions were verified by independent firearms examiner Lynette Lancon.  The government informed DFS of the testing error on January 17, 2020, and attached Spinder's report (USAO-004032-33).

Several weeks later, Jonathan Pope, the director of the Firearms Examination Unit at DFS, contacted Spinder and they exchanged images of the firearms evidence that Spinder had reviewed (USAO-007958-61).  Spinder stated that the images sent to him by Pope did not resemble the physical ballistics evidence he examined.  The following day, DFS General Counsel Todd Smith sent a letter to AUSA Michael Ambrosino that stated "[w]e have confirmed your letter's statement to be erroneous" and that DFS had "confirmed that [Spinder] never performed a comparison of the two casings recorded in the [August 8, 2017, Vallario] report" (USAO-004037-38).  Similarly, in a February 14, 2020 memorandum submitted by Director Smith to Kevin Donahue, then-Deputy Mayor for Public Safety, DFS stated that "the DFS identification [the USAO] alleged to have been in error, had actually never been reviewed by [Spinder]" (USAO-000008-16).

The government requested another analysis from independent firearms examiner John Murdock.  Murdock issued a report on February 12, 2020, reaching the same conclusion – an exclusion – as Spinder (USAO-003860-91).  Murdock's work was verified by firearms examiner Todd Weller.[18]

Based on interviews of Michael Mulderig in August 2020 (USAO-007950-53), and initials on the evidence packaging as shown in photographs of the packaging taken by Todd Weller (USAO-007954-57), the government learned that additional DFS firearms examiners may have examined Items 16 and 45 between May 1, 2020 and May 4, 2020.  As described in the interview summaries, Mulderig stated that he changed his determination from identification to inconclusive after comparing "his evidence" to "Vallario's evidence," although he could not say with absolute certainty that he reviewed Item 16.  He stated that his evaluation was not documented in any way.  Mulderig stated he was told in early May 2020 that he could no longer work as a contract firearms examiner because of quality issues arising from his verification of Vallario's analysis in August 2017.  Mulderig stated that Jonathan Pope had also told him that firearms examiner Elizabeth Bustamante had reached a conclusion of identification when reviewing the evidence.  The government to date has received no information from DFS

---

[18] Weller has often served as a government expert concerning sophisticated firearms examination issues (including in the case *United States v. Marquette Tibbs*, 2016 CF1 19431) and served as one of the members of the USAO/OAG audit team (as discussed *infra*).

concerning Bustamante's involvement, but her initials are present on the packaging for Items 16 and 45, dated the first days of May 2020 (USAO-007954-57). Initials consistent with DFS supervisory firearms examiner Jonathan Fried were are also present on the packaging in that time period. *Id.*

On May 22, 2020, Director Smith sent a letter to the USAO stating that DFS firearms examiners had "performed a review of the relevant pieces of evidence," that "[t]his review revealed an administrative error on the part of the initial examiner [Vallario], who appears to have incorporated the wrong microscopic photograph into the relevant NIBIN report," and that "when the contract firearms examiner who performed the 2017 verification [Mulderig] was asked to examine the evidence again, he changed his conclusion from an *identification* to an *inconclusive*" (USAO-004039-40).[19]

On May 27, 2020, DFS issued a report authored by Jonathan Fried concerning Items 16 and 45 that stated that his analysis began on May 12, 2020 (USAO-003931). Fried's report stated that the two items "were microscopically examined and could not be identified or eliminated as having been fired in the same firearm due to insufficient agreement or disagreement of individual characteristics." Fried's conclusions were verified by firearms examiner Ashley Rachael.

The independent auditors retained by the USAO conducted an audit of specific activities at the DFS FEU (*see* USAO-007940-43). On May 21, 2020, the auditors issued an Interim Report (USAO-007908), and on June 4, 2020, an Addendum to that report (USAO-007927). On July 29, 2020, the auditors submitted a proposed audit plan (USAO-003543). On August 9, 2020, the auditors issued a second Interim Report (USAO-007944). The auditors determined (among other things) that the photograph contained in Vallario's case file of two cartridge casings identified as Items 16 and 45 was not of either Item 16 or 45 (USAO-007909), and that Fried's conclusion of "inconclusive" (verified by Rachael) was not scientifically supported (USAO-007927-32). Rather, the auditors concluded that "Items #16 and #45 were <u>not</u> fired in the same firearm," a "conclusion commonly referred to as an 'elimination' or 'exclusion'" (USAO-007930).[20]

On June 12, 2020, in *United States v. Rondell McLeod*, 2017 CF1 9869, the government submitted a discovery request to DFS that sought five categories of information from DFS related to the ballistics comparisons and examinations in that case (USAO-007962-65). DFS responded that it was unwilling to provide the requested material (USAO-008367-73). Accordingly, the government sought subpoena power from the Court to obtain the specific documents sought in the government's June 12, 2020 discovery request to DFS. On July 15,

---

[19] The May 22, 2020 letter did not address the false identification by Barrett in January 2016 (verified by Morales). It did not state whether Mulderig's employment with DFS had been terminated. The letter stated that "DFS will conduct a case review of a sampling of the verifying examiner's cases" and "because of the presence of the initial examiner's apparent administrative error, DFS will subject the initial examiner's cases to review as well." Finally, the letter stated that seven Quality Corrective Action Reports were opened and that stakeholders would be kept aware of any developments. These "QCARs" were produced in response to the subpoena issued in the *McLeod* case, without their referenced internal supporting documentation. *See* USAO-003134-93.

[20] The auditors also stated that "[t]he finding of 'inconclusive' by Fried and his verifier [Rachael] are not supported by their examination documentation" (USAO-007931).

2020, the government served a subpoena *duces tecum* on DFS seeking the requested documents (USAO-008374-77).

DFS produced a limited range of documents to the government in advance of an August 21, 2020, evidentiary hearing in the *McLeod* case (USAO-007966-8304).  DFS also produced a privilege log to the government on August 26, 2020 (USAO-008378-81).

On November 10, 2020, Judge Edelman ruled on DFS's privilege assertion and directed DFS to produce 24 documents to the government subject to a protective order that appeared to prohibit their disclosure to defendants in other cases (USAO-008403-42).  DFS produced these 24 documents on November 12, 2020, subject to the protective order (USAO-008443-8705).  On November 20, 2020, Judge Edelman granted the government's motion to vacate this protective order.

The documents produced by DFS on November 12, 2020, include the following:

- <u>Document 11</u>: Email dated January 21, 2020 from Jonathan Fried to Jonathan Pope attaching a document entitled "Ambrosino Inquiry Chain of Custody Summaries 1-21-20.docx". Attached summary states that both Items 16 and 45 had been sent to Travis Spinder in November 2019.  (USAO-008528-45.)
- <u>Document 12</u>: Email dated January 21, 2020 from Jonathan Fried to Jonathan Pope stating, "This probably creates more confusion, but if you look at the chains of custody from file on Q for each item, you will see that they both went to an outside lab at the same time that LIMS says Travis had it."  (USAO-008546-53.)
- <u>Document 20</u>: Email dated January 22, 2020 from Jonathan Pope to Wayne Arendse stating "Good Morning Wayne, please see the attached Jon Fried summary, per Dr. Smith, to provide the COC documentation for both cartridge cases."  (USAO-008554-71.)
- <u>Document 24</u>: Email dated January 23, 2020 from Jonathan Pope to Jonathan Fried forwarding an email dated January 23, 2020 from Jonathan Pope to Wayne Arendse stating "Wayne, (See above Attachment #1, page 9) and you will see that Alicia examined and compared Item 22.24 (45) from DFS#15-00253 to Item 1 (16) from DFS#15-00673."  (USAO-008572-600.)
- <u>Document 25</u>: Email dated January 23, 2020 from Jonathan Pope to Wayne Arendse and Jonathan Fried attaching USAO evidence transfer request to Travis Spinder.  (USAO-008601-07.)
- <u>Document 29</u>: Email dated April 30, 2020 from Ashley Rachael to Wayne Arendse, Christopher LoJacono, Abdel Maliky, Todd Smith, Jonathan Pope, and Jonathan Fried, attaching a PowerPoint presentation dated April 30, 2020 by Ashley Rachael and Jonathan Fried.  (USAO-008611-32.)
  - The PowerPoint included the following statements on page 17:
    - All the cartridge cases in both homicide cases were examined in an attempt to locate the cartridge cases pictured in Vallario's case file
    - After a thorough review, it was determined that the photograph in Vallario's case file was not a picture of any of the items in either of the two homicide cases
    - Conclusions reached by independent reports were also confirmed
  - The PowerPoint stated the following on page 20 entitled "Results and Conclusions":
    - Based on a microscopic examination conducted by both Jonathan Fried and Ashley Rachael of Items #1 (16) and #22.24 (45), it was determined to be an **<u>elimination</u>** and not an identification as indicated by Morales and Vallario

- ▪ This elimination transitively agrees with the conclusion reached by the private examiner
- o The PowerPoint stated the following on page 21 entitled "Results and Conclusions":
  - ▪ The Items #1 (16) and #22.24 (45) were in Vallario's custody during the time period for which she issued the report and Mulderig completed the verification (8/8/17)
  - ▪ Her initials and date on the packages' seal of these two items correspond with this timeframe
  - ▪ The items in her photograph were not in Vallario's custody during the time this NIBIN re-work report was issued
  - ▪ The chain of custody (CoC) for those items pictured are consistent with that previous examination
- o The PowerPoint stated the following on page 22 entitled "Next Steps":
  - ▪ Assign re-work of NIBIN Verification to another qualified examiner not involved thus far
  - ▪ Report to stakeholders for transparency
- • <u>Document 35</u>: Email dated May 1, 2020 from Jonathan Fried to Ashley Rachael, forwarding email dated May 1, 2020 at 1:20 p.m. from Michael Mulderig to Jonathan Fried copying Jonathan Fried, stating "Items 16 submitted under DFS 15-00673 and 45 submitted under DFS 15-00253 two (2) caliber 10mm Auto cartridge cases that were microscopically examined and identified as having been fired in the same firearm." The email attaches photographs dated May 1, 2020. (USAO-008638-41.)
- • <u>Document 30</u>: Email dated May 1, 2020 at 3:00 p.m. from Michael Mulderig's private email account to Jonathan Pope, stating "After further review of comparison between homicide DFS 15-00253 and NIBIN DFS 15-000673 I am reversing my opinion to be inconclusive due to a sufficient agreement of individual characteristics." (USAO-008633.)
- • <u>Document 31</u>: Email dated May 1, 2020 from Jonathan Fried to Jonathan Pope entitled "timeline", stating in part: "April 27 – April 29: FEU Examiner and Supervisor review case files, packaging, and perform cursory review of the specific items in question, where it is determined that the photo in the Vallario case file is not of the evidence in either case. April 30: In-depth review update provided with FEU Examiner and Supervisor's thoughts and recommendations." (USAO-008634.)
- • <u>Document 44</u>: Email dated May 6, 2020 from Wayne Arendse to Anna Yoder of ANAB entitled "**CONFIDENTIAL** RE: 200127-DCDFS-Firearms Examiner-Inquiry", attaching a letter dated May 6, 2020 from Arendse to Yoder. The letter stated in part: "On April 28, 2020, the FEU Supervisor and a senior Firearms Examiner performed a review of the relevant physical evidence. This review is described in greater detail in the attached PowerPoint presentation," and "[a]t the conclusion of their review of the relevant physical evidence, the FEU Supervisor [Fried] and senior Firearms Examiner [Rachael] concluded that the original identification should have been determined inconclusive. Based on this determination, the FEU manager discussed the matter with the original verifying examiner [Mulderig] to review the physical evidence. Upon review, the original verifying examiner [Mulderig] concluded that the association between the two cartridge casings at issue should be determined inconclusive." The attached PowerPoint stated the following: "The review[er]s who conducted this reviewed the evidence and determined a[n] inconclusive result." (USAO-008642-73.)
- • <u>Document 66</u>: Email chain with top email dated June 22, 2020 from Wayne Arendse to Anna Yoder of ANAB entitled "RE: 200622-DCDFS-Firearms Exmainer-Update_ack-Inquiry". An email in the chain from Arendse to Yoder, copying Jenifer Smith, Todd Smith, and Abdel

Maliky states in part: "We received this report as part of a larger sample discovery production assembled by DC OAG, and relating to the USAO's current disagreement with DFS's FEU. Included within those additional documents is a highly confidential DFS report on serious ethical problems at USAO. Because these documents are unusually sensitive, and not closely related to Quality at DFS, we have left them out of this initial production. If you are comfortable receiving these sensitive documents, at your request, we will pass along the larger document in full."  Yoder responded: "ANAB is requesting that the additional 'sensitive' documents you mention in your email below."  To its knowledge, the government has never received the "highly confidential DFS report on serious ethical problems at USAO."  (USAO-008678-80.)

On July 15, 2021, the Honorable Milton C. Lee, Jr., now presiding in the *McLeod* case, granted the government's unopposed motion to reconsider DFS's privilege determination, and vacated Judge Edelman's November 10, 2020, order finding that certain DFS documents remained privileged. DFS then provided the government with the remaining 29 documents that Judge Edelman had previously found to be privileged. The government posted these documents to the DFS Disclosures USAfx folder on July 19, 2021 (USAO-012823-013148).

B.  Final Audit Report and ANAB's Withdrawal of Accreditation from DFS

At the request of OAG, on March 18, 2021, the team of independent auditors (Bruce Budowle, James Carroll, and Todd Weller) issued a Final Report of Review and Audit of Selected Casework of the Firearms Examination Unit of the Forensic Science Laboratory Division, Department of Forensic Sciences, District of Columbia (USAO-009063-88).  The Executive Summary of that report states, in part:

> Based on the above findings, the audit team does not have confidence in the analytical results of the FEU. The audit team recommends that the FEU immediately cease performing casework and that clients and stakeholders not rely on results from the FEU. A comprehensive evaluation of the technical competence of all current examiners is required, followed by retraining and testing to establish that they are competent to perform casework and reach appropriate conclusions. Casework already completed by the FEU should be reexamined by qualified examiners in an effort to determine if additional errors have been made. It does not appear that the DFS possesses the qualifications to perform the necessary evaluations, retraining, testing, and casework review that is required, and the audit team recommends that appropriate qualified persons from outside of the DFS be brought in to perform these activities.

> The above findings also illustrate very serious, and perhaps more troubling, problems associated with DFS management. DFS management not only failed to properly address the conflicting results reported to the DFS by the USAO, but also engaged in actions to alter the results reached by the examiners assigned to conduct a reexamination of the evidence. DFS management then misrepresented the various activities undertaken and analytical conclusions reached to their clients and stakeholders, including the USAO, the OAG, their accrediting organization (ANAB), and the SAB. In the opinion of the audit team, such actions by management indicate a lack of adherence to core principles of integrity, ethics, and professional responsibilities. Management has cast doubt on the reliability of the work product of the entire DFS laboratory.

On April 2, 2021, the ANSI National Accreditation Board ("ANAB") informed DFS that it was "immediately suspending the laboratory's accreditation and initiating the process for withdrawal of accreditation" (USAO-010115). The letter informed DFS that "ANAB has received credible evidence that the D.C. Department of Forensic Sciences, Forensic Science Laboratory Division, has deliberately concealed information from the ANAB assessment team, violated accreditation requirements, engaged in misrepresentations and fraudulent behavior, and engaged in conduct that brings ANAB into disrepute" (USAO-010115).

By letter dated May 1, 2021, DFS appealed this suspension. An e-mail from DFS to DC-OIG containing a copy of the appeal with exhibits, and the e-mail's attachments, are available on USAFx at USAO-011696-948.

DFS's ANAB accreditation was withdrawn on May 2, 2021. DFS appealed this withdrawal, and a copy of the appeal is available on USAFx at USAO-011995-2245.

A June 11, 2021 letter from Acting United States Attorney Channing D. Phillips to Pamela Sale, Vice President, Forensics, ANAB concerning the DFS appeal is available on USAFx at USAO-012257-64.

DFS withdrew its appeal of the loss of ANAB accreditation during the week of July 5, 2021.

### 4. Materials Related to Ongoing DC-OIG Criminal Investigation

On December 3, 2020, following the production of documents ordered by Judge Edelman in the *McLeod* case on November 10, 2020, DC-OIG opened a criminal investigation related to DFS. DC-OIG's investigation is not a joint investigation with the United States Attorney's Office for the District of Columbia (USAO). The USAO does not direct DC-OIG's investigative activities and will play no role in any charging decisions arising out of the investigation, because the USAO will be recused from any prosecution arising out of DC-OIG's investigation. DC-OIG has, however, been willing to provide the USAO with certain investigative materials in order to assist the USAO in complying with our discovery obligations in cases involving DFS. To that end, DC-OIG has provided the USAO with the following Memoranda of Activity/Interview (MOAs):

*Interviews*

- Bleach, Carenna 05-19-21
- Bustamante, Elizabeth 01-27-21
- Bustamante, Elizabeth 01-28-21
- Clements, Kimberley 04-13-21
- Confidential Source 1 ("CS1") 12-18-20
- Confidential Source 2 ("CS2") 12-23-20
- CS2 03-11-21
- Confidential Source 3 ("CS3") 03-31-21
- Confidential Source 4 ("CS4") 05-27-21
- Elder, Cody 02-12-21
- Fried, Jonathan 12-01-20

- Fried 03-09-21
- Fried 03-10-21
- Geter, Regina 05-06-21
- Graham, Brittany 06-17-21
- Mulderig, Michael 03-24-21[21]
- Rachael, Ashley 12-01-20
- Rachael 03-09-21
- Raj, Rashee 06-23-21
- Reedy, Jacquie 01-11-21
- Sale, Pam (ANAB) 04-02-21
- USAO/OAG Auditors (Budowle, Weller, Carroll) 12-02-20
- Walraven, Tracy 06-02-21
- Watkins, Lyndon 01-11-21

*Other MOAs*

- Review of Arendse Intelligence Report 05-17-21
- Review of DFS ANAB Appeal 05-14-21

The interview MOAs are available in the DFS Disclosures folder on USAFx, in subfolders titled "[Last Name of Interviewee], [Date of Interview]."[22] The other MOAs are contained in a subfolder entitled "Non-interview MOAs." Additionally, where DC-OIG has given the USAO access to source materials for these reports (i.e., agent notes, audio recordings), we have placed these materials in the corresponding subfolder for the report in question.

The USAO has also received from DC-OIG certain other materials from its investigative file. These materials, available on USAFx in the "Other Materials from OIG File" subfolder, include the following:

- An email labeled "Pope Email Re T Smith and OIG Interviews.pdf"
- DC-OIG Investigative Plan
- *Rondell McLeoud* Filing Titled "Praecipe" sent via email from Assistant Inspector General for Investigations to other DC-OIG agents on March 22, 2021
- Forwarding of email from Chief Deputy Attorney General Jason Downs to DC-OIG containing link to Attorney General Karl Racine's referral letter
- Forwarding by email of Acting United States Attorney Channing Phillips's March 22, 2021 letter to D.C. Inspector General Daniel Lucas requesting that DC-OIG "continue to

---

[21] Separately, the United States Attorney's Office provided DC-OIG with a Interview Memorandum summarizing a December 7, 2020, interview of Michael Mulderig by USAO-DC Homicide Chief David Gorman, Deputy Chief Michael Spence and Supervisory Special Agent Bryan Molnar (USAO-009006-009007).

[22] The USAO has redacted personal identifying information redacted to uploading these materials to the DFS Disclosures folder on USAfx. The USAO also redacted a small portion of an MOA at the request of DC-OIG (USAO-008991-008993).

fully investigate the conduct discussed in the report and an other matters that have come to light in your investigation."

- Email with the file title "FW Last Night's Interviews.msg"
- 12 investigative "Chron Log" documents[23]
- 5 investigative "iSight File Contents" documents

Because the Final Audit Report audit report summarizes many of the interviews conducted by DC-OIG and the emails collected by DC-OIG prior to March 18, 2021, and because these source documents provided to the USAO by DC-OIG are available in the DFS Disclosures folder on USAfx, a further summary of these materials is not included herein.

The DC-OIG MOAs contain statements from Confidential Source 2 and Jonathan Fried regarding a meeting with FEU staff at which DFS General Counsel Todd Smith[24] stated, among other things, that the OIG investigation was unlawful and provided guidance regarding how DFS employees should respond to requests from DC-OIG for information and/or interviews (USAO-008996-97, -009026-27).

A March 31, 2021, DC-OIG Memorandum of Activity/Interview of an Interview of Confidential Source 3 ("CS3") "includes new allegations of examination errors in a different DFS forensic unit [the Latent Fingerprint Unit] and potential concealment of those errors by DFS managers and senior leadership" (USAO-010112). Specifically, CS3 alleges that "DFS recently discovered a 'systemic issue' with [Fingerprint Analysis Unit] analysts making examination errors and DFS managers are trying to cover up these issues as well" (USAO-010113).

A May 19, 2021, DC-OIG Memorandum of Activity/Interview with Carenna Bleach provides a series of concerns regarding issues in the Crime Scene Sciences Division of DFS (USAO-012252-56). Bleach alleges that "'someone' in DFS management instructed some DFS employees to shred documents that the OIG and the USAO are seeking, 'rewrite narratives,' and hide issues from DFS Quality Assurance regarding any internal audits." (USAO-012256).

An April 13, 2021, DC-OIG Memorandum of Activity/Interview with Kimberley Clements, a former DFS supervisor, describes concerns regarding DFS's production of Quality Corrective Action Reports (Q-CARs) (USAO-012265). Clements alleges that Director Smith "ordered that all employee names be removed from QCARs" and that Clements's supervisor, Brittany Graham, told Clements that Director Smith "directed the names be removed from the QCARs to prevent defense attorneys from calling DFS employees to testify to address the mistakes listed on the QCAR." Clements further alleges that she "was required to go back as far

---

[23] Chron Log 42-33 indicates that on April 7, 2021, the Chief of the USAO's Superior Court Division attended a meeting with DC OIG agents and members of the U.S. Department of Justice's Public Integrity Section (PIN). This is inaccurate. He did not participate in such meeting with PIN and D.C. OIG agents. Because this office was recused from the investigation, the Chief of the Superior Court Division had a single point of contact within PIN, primarily to address logistical issues and discovery inquiries, with the exception of his first introductory call with the PIN point of contact where he relayed information we knew related to the subject matter of the investigation.

[24] The Memorandum of Activity/Interview of Confidential Source 2 indicates that Todd Smith stated he was speaking on behalf of Dr. Smith, who could not attend the meeting (USAO-008997).

as 2014" to remove employee names from QCARs. Clements alleges that then-General Counsel Rashee Raj asked Clements to prepare "a spreadsheet with the information listed on the QCAR to include the employee's name and the issue that resulted in the QCAR. Clements alleges that she worked on such a spreadsheet in early 2019 and then e-mailed it to Raj. Clements also alleges that Director Smith "wanted the QCARs that looked 'really bad' removed from DFS,"; Clements provided an example of a QCAR from 2015 describing the Public Health Laboratory's loss of two vials of bubonic plague. Clements alleges that this QCAR was "missing" when she looked for it in 2018. Clements was terminated from DFS in June 2020.

In a June 17, 2021, DC-OIG Memorandum of Activity/Interview with Brittany Graham, former DFS deputy director (USAO-012479), Graham alleged that while she was interim Deputy Director of Quality, she "was directed to implement a practice of removing the names of DFS employees from QCARs." Graham alleged that "in time, she believed that" the purpose of "the practice to hamper the defense attorneys was implied" by former Deputy Director Wiggins and Director Smith. Graham further alleged that "removing the names from QCARs did not keep management from knowing the identity of involved employees." Graham alleged that Clements compiled for Raj "a list that linked the nameless QCARs to the names of employees involved in the quality issue."

In a June 23, 2021, DC-OIG Memorandum of Activity/Interview with Rashee Raj, former DFS General Counsel (USAO-012483), Raj provided additional information regarding the removal of names from QCARs. Raj also alleged that she asked Brittany Graham to prepare a spreadsheet "with the names of each DFS employee (scientist) and each QCAR associated with that employee." Raj alleged that Kimberley Clements was assigned to create the spreadsheet, and that Clements may have placed the spreadsheet on a shared drive.

In a May 27, 2021, DC-OIG Memorandum of Activity/Interview with Confidential Source 4 (CS4) (USAO-012355), CS4 alleged that it "had not witnessed DFS management request that DFS employees delete documents from the DFS Laboratory Information System but heard that it has happened." CS4 also alleged that "during a meeting with DFS [General Counsel Todd Smith] and Steven Chase, contractor FE, DFS, provided training on how employees should answer questions related to the current DFS investigation" if they were called to testify. CS4 alleged that "the training was different from any other training because T. Smith was involved. CS4 felt that DFS management was trying to lead employees how to testify."

A May 17, 2021, DC-OIG Memorandum of Activity/Interview discusses an intelligence report indicating that Wayne Arendse, DFS's Forensic Science Laboratory Director, was sued in Canada for allegedly "plagiarizing large parts of a quality assurance manual he purportedly wrote." (USAO-012308)

## 5. Quality Corrective Action Reports

According to DFS's Practices for Quality Corrective Action, "[q]uality corrective action shall be implemented when nonconforming work or departures from the policies and procedures in the management system or technical operations have been identified and evaluated for frequency and impact."[25] As part of its practices for Quality Corrective Actions, DFS generates

---

[25] See DFS Department Operations Manual (DOM) 07-1275-10: Practices for Quality Corrective Actions, *available at* https://dfs.dc.gov/sites/default/files/dc/sites/dfs/publication/attachments/DOM%20-%20Practices%20for%20Quality%20Corrective%20Actions.pdf.

Quality Corrective Action Reports (Q-CARs).  On February 5, 2020, DFS provided the USAO with copies of Q-CARs that DFS said represented its collection of Q-CARs through that date.  At the time, DFS did not provide underlying documentation for these Q-CARS.   DFS subsequently provided the USAO with additional Q-CARs.  Again, DFS did not provide underlying documentation for these Q-CARs, to the extent such documentation exists.  The index of Q-CARS lists those Q-CARs, along with certain related materials, that DFS provided to the USAO in 2020.  On November 19, 2020, DFS provided the USAO with its own index of QCARs (USAO-008706-26) and an explanation for some of the gaps within the chronological numbering system (*see* USAO-008752-58).

On June 22, 2021, in response to a government trial subpoena in *United States v. Malik Hewitt*, 2017 CF1 9418 (D.C. Super. Ct.), requesting Q-CAR information related to particular DFS employees involved in that case, DFS provided, among other items, a hard drive that it informed the government contains "all QCARs, QPARs, and Non-Conformity Tracker entries"—irrespective of the DFS employee involved.  In a declaration from Quality Unit manager Lyndon Watkins (USAO-012487), DFS also stated that it had gathered "all [of] the supporting documents" for "each QCAR, QPAR, and Non-Conformity Tracker entry," and was providing them in bulk to the government as potentially responsive to the government's subpoena.[26] With respect to Non-Conformity Tracker entries, DFS provided the government with a PDF document titled, "Nonconformities from Qualtrax Oct 2019 to current_v1.pdf." This document is available on USAfx (USAO-012508-012535)

The Watkins declaration states that unless an employee's name is included in a Q-CAR, Q-PAR, or the Non-Conformity Tracker, "DFS has no effective or reliable means of determining whether any given current or former employee is in any way associated with a given Quality document," and that DFS "is not aware of any additional steps DFS could take to aid in determining whether any specific current or former employee is in any way associated with or involved with" a particular corrective action.

As described above, DC-OIG MOAs for interviews of Kimberley Clements, Brittany Graham, and Rashee Raj discuss allegations that DFS systematically removed employee names from Q-CARs.

Source materials for several Q-CARs reviewed by the government allude to this alleged practice. The government is flagging several e-mails to assist the defense, but our identification of these e-mails is not intended to be comprehensive or imply that other such e-mails do not exist. We certainly do not suggest that we have found all similar e-mails throughout the Q-CARs, to the extent they exist. The e-mails referenced below have been separated from their corresponding Q-CARs and placed on USAFx.

USAO-012495: In an email titled "RE: QCAR 17-013-CSS – Update" there are 11/29/2017 emails and an 11/30/2017 email between DFS CSSU Supervisor Kristi Stone, Kimberly Clements, and Brittany Graham (not all three are on all the emails) regarding the removal of names from QCARs and the reason.

USAO-012499: In a December 1, 2017, email titled, "Re QCAR 17-052 CSSU.msg", related to QCAR 17-052-CSS-CSSU, Kimberly Clements stated:

---

[26] Upon information and belief, Watkins has since been separated from DFS.

Thanks for putting together Parts A and B on this. Not sure if Brittany had passed this on to you, but we are moving away from using scientists' names in QCARs since the PD has been requesting these on specific scientists. Would you have a problem with me editing the Parts A and B to take out the names of those involved, and returning to you for a signature? Also, did you want me to write up a Part C on this, or did you want to knock it out at the same time?

Thanks,

Kim

USAO-012491: In an April 22, 2019 email titled "potential nonconformity.msg" and related to QCAR 19-012-FSL-FEU, Elizabeth Bustamante stated: "We identified a potential quality issue today in FEU, and Jonathan asked me to write it up for you without names, for your evaluation of actions needed and guidance on how to proceed." The email is sent to Stephen Milligan, and Jonathan Pope and Brittany Graham are copied.

In light of the unique facts and circumstances presented by management problems at DFS, the government has created a searchable Eclipse database containing all Q-CARs, Q-PARs, and source documents for Q-CARs and Q-PARs that we have received from DFS, and we are making this database available to the defense on USAfx (USAO-013153).[27] The government will disclose these materials subject to a protective order. The undersigned will contact you separately to provide a proposed order for your review.

## 6.  Internal DFS Investigation of 10 Members of the Crime Scene Sciences Division

On May 7, 2021, USAO-DC was notified via e-mail by Todd Smith, General Counsel of DFS, of the following:

DFS will be opening an internal investigation which may lead to discipline. The investigation involves 10 members of the Crime Scene Sciences Division, and their recording of report distribution dates. Please let me know if you need any additional information, or if you demand to know the identities of the 10 individuals.

Upon USAO-DC's request, DFS provided the names of the 10 individuals.  On July 19, 2021, DFS's interim General Counsel notified the USAO that DFS has "proposed termination" for seven Crime Scene Sciences Division employees involved in the investigation. The USAO received source documentation regarding the investigation on July 20, 2021.The USAO is making available on USAfx a summary document and three redacted investigative reports prepared by DFS's interim General Counsel (USAO-013151-013171). Please refer to these documents for additional information.

## 7.  Materials Related to a DFS Case Review and Audit of Selected Casework of the DFS Latent Fingerprints Unit (LFU)

On April 30, 2021, the Department of Forensic Sciences gave a public presentation to its Scientific Advisory Board regarding two pending QCARs: the first arising from a self-reported discrepancy by LFU examiner Roslyn Sensabaugh, and the second from an associated Mideo case review.  A copy of the PowerPoint presentation is available on the DFS Disclosures folder

---

[27] The database is contained in a zipped folder titled "External Publish." After unzipping the folder, open the file titled "LaunchViewer.exe." The government has also made available on USAfx three reference guides for using the Ipro Eclipse SE 2014.1.0 software.

on USAfx as USAO-011949 – USAO-011967, and DFS's presentation is publicly available for
viewing at:

https://dcnet.webex.com/recordingservice/sites/dcnet/recording/9f156d5a8be01039bbfe0
050568167e5/playback or https://dfs.dc.gov/node/1536051.

     On May 12, 2021, DFS gave a PowerPoint presentation to USAO-DC, attached as
USADC-011968 – USAO-011973.  Pursuant to USAO-DC's follow-up request, DFS then
provided the following additional materials, which are available in the DFS Disclosures folder on
USAfx:

- LFU QCAR PowerPoint provided to USAO on May 14, 2021; Two-slide PowerPoint
  describing the two pending QCARs, USAO-011974 – USAO-011975;
- Mach 24, 2021 memo from Jessica Beckman to Wayne Arendse and attached list,[28]
  USAO-011976 – USAO-011984; and
- April 9, 2021 memo from Jessica Beckman to Wayne Arendse (five pages), USAO-
  011985 – USAO-011989.

USAO-DC has requested but not received the two pending QCARS.  Additionally, also available
in the USAFx folder, please find an April 27, 2021 memo from DFS to USAO-DC, OAG, PDS
and others regarding the sufficiency review.  *See* USAO-011990 – USAO-011991.

     Because these source materials are available on USAfx, a fulsome summary of these
materials is not included herein.  In brief, with regard to the first QCAR,[29] DFS reviewed Ms.

---

[28] The CCNs have been redacted.

[29] DFS reported that this review was initiated when Ms. Sensabaugh received a request for
additional comparisons in a case in which she had already issued a report, specifically DFS Case
#20-05639. *See* USAO-011950 (SAB Apr. 30, 2021 PowerPoint at Slide 2); USAO-011987 (April
9, 2021 Memo at 3).  She "discovered (self-reported) the original sufficiency results that she
disagreed with."  *See id.*  This case is listed in the April 9, 2021 memo from Jessica Beckman to
Wayne Arendse. *See* USAO-011985 (Case #5).  As it relates to this case, the April 9, 2021 memo
states: "This is the original case where the analyst personally identified issues and made a change
in their result of seven items. This original report was issued on August 27, 2020 and an Amended
report on January 7, 2021.  Through a review of this case, it was discovered that an additional 20
items, including 7 latent lifts and 13 photographs contained 25 additional latent impressions that
are of value for further examination." *See* USAO-011987 (April 9, 2021 Memo at 3).  The shift
resulted in "3 additional AFIS identifications" of two individuals, "both identified in original
request/report." *See* USAO-011950 (SAB Apr. 30, 2021 PowerPoint at Slide 2).  On January 29,
2021, DFS provided notice of the shift to the AUSA assigned to this particular case, *see* USAO-
011992 (January 29, 2021 email from General Counsel to DFS), and on February 19, 2021,
provided general notice that DFS was conducting a review of Ms. Sensabaugh's work, *see* USAO-
011993 (February 19, 2021 email from General Counsel to DFS).  As it relates to the general
review of Ms. Sensabaugh's work, the February 19 email stated, "DFS is conducting a case review
(not a re-work) of a latent fingerprint examiner's value/no value calls (not her identification/
exclusion conclusions). The review was triggered when the examiner received a supplemental
discovery request that caused her to review a print she had previously determined "no value" and
for that reason not analyzed. Looking at the print a second time, she determined the print was of
sufficient value to go forward with analysis. Please let me know if you need the name of the
examiner."

Sensabaugh's cases with some unverified results between September 9, 2019,[30] and January 12, 2021, specifically 40 cases (42 requests for service).[31]  *See* USAO-011953 – USAO-011954 (SAB Apr. 31, 2021 PowerPoint at 5-6.)  DFS identified disagreement in 20 of these cases, and a total of "78 items with 87 disagreements (NV or additional impressions were noted on items of value)."  *See id.* at USADC-011959 (Slide 11). DFS has sent these cases to Ron Smith & Associates (RS&A) for reexamination.

DFS also had all LFU examiners (10) "perform[] a self-audit on their cases that were examined within the Mideo Database Platform for compliance with the focus of the QCAR, by specifically ensuring that the Mideo workspace was used to properly view all photos to determine sufficiency of the ridge detail present in unverified no value prints"  *See* USAODC-011976 (3/24/21 Memo at 1.)  In four total cases, involving five sufficiency findings, two analysts reported result changes from "no value" to "of value."[32]  *Id.*  Per the attached March 24, 2021 memo, the "[t]his change was because not all versions of the latent images were opened in Mideo."  *Id.*

In addition, DFS's Quality Assurance Unit selected five cases per LFU Examiner to send to RS&A for a review of sufficiency decisions ("no value"/ "of value").  *See* USADC-011964 (SAB Apr. 30, 2021 PowerPoint at 16). During the week of June 14, 2021, former LFU Manager Jessica Beckman reported that 44 of the 45 had been reviewed for sufficiency by Ron Smith & Associates, and the results returned to DFS (all but DFS 20-06543).  For the 44 that have been returned, in approximately 42 of them had at least one sufficiency inconsistency from the original DFS examination.

## 8.  DC-OIG Bulk Collections of DFS E-mails

As part of DC-OIG's ongoing criminal investigation into DFS that began in December 2020, DC-OIG requested and received from the D.C. Office of the Chief Technology Officer nearly 200,000 e-mails related to multiple DFS employees. DC-OIG summarizes this bulk e-mail request and collection, as well as a privilege review conducted by DC-OIG's Office of General Counsel, in a document titled "OIG DFS Email Review Summary Doc.docx," which has been uploaded to USAFx. Approximately 184,450 of these e-mails have been provided to the USAO.

In light of the unique facts and circumstances surrounding DC-OIG's ongoing investigation of DFS, the government intends to disclose these e-mails to defense counsel in cases involving DFS. We are currently working to process these e-mails so they are more easily searchable and will provide them in such format when they are completed and with a protective

---

[30] This is the approximate date DFS began use of Mideo in case work.

[31] The universe of the examiner's cases from Mideo during this time was 147 cases, 105 of which were 100% verified.  *See* USAO-011953 (SAB April 30, 2021 PowerPoint at Slide 5).

[32] Jerry Craft identified three cases.  Trish Sharkey identified one case.  The four cases in which the examiners self-identified that they did not open all applicable images and wanted to change their "of-value" / "no value" results are highlighted yellow in the attachment to the March 24, 2021 memo from Jessica Beckman to Wayne Arendse describing the LFU examiners' self-audit and the results thereof.  *See* USAO-011976, 011979, and 011983.  These examiners are contractors from RS&A.

order.  The DFS e-mails obtained as part of the earlier DC-OIG investigation with the FBI and the USAO's Fraud and Public Corruption Section will also be made available to you in a searchable format with a protective order.

      If you have any questions, or need assistance with USAfx, please contact the undersigned Assistant United States Attorney.

Sincerely,

CHANNING D. PHILLIPS
Acting United States Attorney

By:    */s/ Emory V. Cole*
    Emory V. Cole
    Jason Feldman
    Assistant United States Attorneys