UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES | : | 21 CR. 221 (CJN) |
|---|---|---|
| v. | : | |
| MARK BLUE | : | |
| Defendant. | : | |

# **DEFENDANT'S MOTION FOR PRETRIAL RELEASE**

## **INTRODUCTION**

After due consideration of the facts and circumstances of this case, Defendant Mark Blue respectfully moves this Court to Order his pretrial release to the High Intensity Supervision Program ("HISP") with appropriate conditions of release, including home detention, wearing a GPS bracelet, no access to electronic devices (including cellular phones and/or computers), daily check in with Pretrial Services, and any other conditions of release that the Court deems appropriate.

Mr. Blue is a thirty-two year-old long-time resident of the Washington, D.C. area. Undersigned counsel has confirmed that if the Court grants this motion, he can live with his girlfriend and that she will agree to act as his court authorized custodian and report any violation of his release conditions immediately to Pretrial Services, the prosecutors and agents assigned this case, and the Court. [1]

As set forth herein in greater detail, although the defendant is charged with a serious offense, the evidence against him is not particularly compelling; there is no physical or scientific evidence connecting Mr. Blue to the charged sex offense. In sharp contrast, the Government has

---

[1] The defense has provided contact information for Mr. Blue's girlfriend to Pretrial Services, so they may independently confirm this information.

1

evidence that DNA from the co-defendant (who emphatically denied participation in the offense at the time of his arrest) was recovered from the victim. While some evidence exists to connect Mr. Blue to these events, even evidence of presence at the scene of a crime is not the functional or legal equivalent of guilt on the merits.

Moreover, the Government chose to re-indict this case in federal court more than two years after Mr. Blue was arrested for the same event in the Superior Court for the District of Columbia., where he was detained without bond.[2] That change resulted in the appointment of new counsel and necessitated a completely new review of the voluminous and complicated evidence in the case. While undersigned counsel has been diligent in that regard, significant, additional work needs to be done and the defense investigation has been seriously hampered by: (1) the passage of time; and (2) the restricted access to his client because of the continued COVID pandemic. Indeed, the defendant has been subjected to two "quarantine" periods in the DC jail twice in the last month and a half; during the quarantine periods, counsel could not visit his client (nor conduct a video or legal call) for fifteen days. As a matter of professional responsibility, undersigned needs to consult with his client regularly about the defense in this case, without unforeseen interruptions.

The defense believes that the suggested conditions would be sufficient to guarantee the defendant's return to Court and the safety of the community, as required by the Bail Reform Act. In addition, the defense specifically requests that Mr. Blue be granted "temporary release" under the Bail Reform Act, so that he can prepare for the defense of his case pursuant to 18 U.S.C. Section 3142(i).

---

[2] Remarkably, the federal indictment also contains a charge under the District of Columbia Code, which could have been brought in the original Superior Court case.

# FACTUAL BACKGROUND

The Government alleges that on December 3, 2018, Mark Blue and his co-defendant Nick Savoy jointly participated in the armed kidnapping and sexual assault of a female complainant identified as "J.S." The complainant alleged that she did not know her attackers, who forced her into a car at gunpoint, used her ATM card to withdraw funds from her bank account, and then repeatedly raped her. After the alleged attack, defendant Savoy was positively identified from a surveillance photograph from the bank ATM camera using the victim's debit card.

Savoy then fled the Washington, D.C. Metropolitan area and traveled to North Carolina; after being publicly identified in connection with the crime, he made arrangements to surrender to law enforcement officers and was arrested at a gas station near Roanoke, Virginia. After his arrest, defendant Savoy waived his *Miranda* rights and on December 11, 2018, he voluntarily participated in a recorded interview with detectives from Washington, D.C. and Prince Georges County, Maryland. During the course of a twenty-three minute interview he vehemently and repeatedly denied any involvement in the abduction and rape. A subsequent comparison of Savoy's DNA with evidence obtained from the victim, however, concluded, *inter alia*, that it was 1.47 octillion (1.47 x 10 to the 27th power) times more likely that the DNA sample from the victim "originated" from defendant Savoy. No such DNA evidence links Mr. Blue to the alleged offense.

The defendants were originally charged in the Superior Court of the District of Columbia, but when the parties were not able to agree to a non-trial resolution, the Government unilaterally indicted them in federal court on March 16, 2021 – more than two years after their arrest. The Government filed a motion for pre-trial detention (DE 9) and Defendant Blue agreed to pretrial

detention in this case, subject to later requesting pre-trial release. The defense now moves this Court for pre-trial release to the HISP Program, under the most stringent conditions of release.

## LEGAL ANALYSIS

The criminal justice system in the United States operates in favor of the release of persons charged with criminal offenses. "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>United States v. Gloster</u>, 969 F.Supp. 92, 96–97 (D.D.C. 1997). The federal bail statute grants this Court the authority to release the defendant upon the "least restrictive" combination of conditions necessary to assure his appearance and the safety of the community. 18 U.S.C. Section 3141(c). In reaching this decision, the Court should consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the defendant's personal characteristics; and (4) whether release would pose a danger to the community or risk of flight. The Government must establish the risk of flight component by a preponderance of the evidence and dangerousness by "clear and convincing" evidence. <u>United States v. Karni</u>, 298 F.Supp.2d 129, 131 (D.D.C. 2004).

In this case, the Government's detention memorandum argued that the defendants should be detained pending trial because, *inter alia*, the charged offenses carry a potential sentence of life in jail; that the weight of the evidence is "compelling," and as such, no conditions or combination of conditions of release can protect the community given the nature of the offense and defendant Blue's criminal history. Notably, the Government did not rely upon a presumption in favor of detention and thus, the Government has the burden of showing, by "clear and convincing evidence," that a defendant poses a danger to the community." <u>United States v. Hudspeth</u>, 143 F. Supp. 2d 32, 37 (D.D.C. 2001). As Judge Bates recently explained:

> "[t]o justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.' " 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting

> 18 U.S.C. § 3142(f)). That requires the government to establish that the defendant poses a continued "articulable threat to an individual or the community" that cannot be sufficiently mitigated by release conditions. Id. (quoting Salerno, 481 U.S. at 751, 107 S.Ct. 2095); see also id. ("[A] defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety."). Furthermore, "[d]etention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness ... [as] otherwise the scope of detention would extend beyond the limits set by Congress." Id. at 1283

United States v. Klein, 533 F. Supp. 3d 1, 8 (D.D.C. 2021).

With these principles in mind, the following section addresses the relevant statutory factors that govern this Court's determination as to the granting of bond.

*Nature And Circumstances Of The Offense/Weight Of The Evidence*

The Government alleges that defendant Blue participated in an extremely serious offense, which would include the armed abduction and sexual assault of a stranger. But the label is not by itself a sufficient basis to detain the defendant. The evidence against the defendant may demonstrate presence at the scene of the alleged crime, but not participation in the alleged sexual assault. For example, the Government claims that footage from license plate reader places a car allegedly borrowed by defendant Blue from his girlfriend "around" the scene of the offense. Notably absent, however, is any forensic evidence to connect defendant Mark Blue to the sexual offense (unlike his co-defendant). Likewise, the Complainant has apparently not identified the defendant.

Under the totality of circumstances, the Government's evidence as to the charged offenses is moderate and raises as many questions as to defendant Mark Blue's alleged participation as it answers.

*The Defendant's Personal Characteristics*

The defense acknowledges that Mr. Blue has two prior convictions in the Superior Court of the District of Columbia: a 2013 conviction for Armed Robbery and a 2009 conviction for

Attempted Assault With A Weapon (gun). The prior convictions, however, are not for sexual assault crimes and while they may be troubling, the first offense took place thirteen years ago and the second, almost five years before his arrest in this case. The defendant has no failure to appear charges against him.

***Proposed Release Conditions***

Because of the facts and circumstances of the case and the defendant's prior contacts with the criminal justice system, the defense is not requesting that Mr. Blue be released merely on personal recognizance, with a promise to return to Court. Rather, the defense is requesting released to the HISP Program upon the most restrictive conditions possible: home detention, with GPS monitoring, and no access to electronic devices such as a telephone or computer, and daily verification with Pretrial Services. In addition, the defense offers Mr. Blue's girlfriend, as his custodian.

The Bail Statue expressly provides that a court can grant pretrial release to a defendant and order him to:

> remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community.

18 U.S. Code Section 3142(c)(1)(B)(i).

In this case, undersigned has confirmed that Mr. Blue's girlfriend will allow him to live with her and that she will agree to act as his court certified custodian. She will swear under oath to the Court that if the defendant violates any condition of release, she will immediately report the infraction to Pretrial, the prosecutors and/or agents in this case, and the Court. His girlfriend will explain that while she is willing to allow Mr. Blue to live with her, if he does not abide by the release conditions then she will report him because she would not allow herself to be in

trouble with the law and run the risk of losing custody of her children. It would be hard to posit a more powerful reason to believe that if the defendant's girlfriend is granted status as a custodian, that she will faithfully and completely fulfill her sworn promise to the Court.

The totality of these proposed conditions of release should more than sufficiently guarantee the safety of the community. [3]

**Temporary Release To Prepare For Defense**

As an alternative – and independent - basis for pretrial release, the defense requests that Mr. Blue be allowed to "temporarily" leave the D.C. jail and reside with his girlfriend, until the ongoing COVID restrictions imposed by the pandemic on attorney-client visits at the D.C. jail abate. The bail statute authorizes such release, holding that a:

> judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S. Code Section 3142(i).

In this case, the Government has provided this defense with an extraordinarily large amount of discovery. The materials consist of law enforcement reports, laboratory analysis, photographs, affidavits, video, and numerous audio discs. These materials appear to comprise several thousand pages in total. The defendant personally needs to review all of the discovery in order to prepare a defense to the charges. As a matter of policy, undersigned does not leave discovery materials with his clients at the jail and a significant amount of the discovery in this case is subject to a Protective Order. Prior to the pandemic, counsel would visit his clients as

---

[3] The Government also has the burden of proving that the defendant is a risk of flight by a preponderance of the evidence. See, e.g., United States v. Xulum, 84 F.3d 441, 442 (D.C. Cir. 1996). The detention memorandum filed in this case did not argue for detention based upon risk of flight and as a practical matter, if released, the defendant would not have the ability to flee given the restrictive conditions of release.

7

frequently as needed and review with them the contents of the Government's discovery materials. Under the current restrictions imposed by the pandemic at the D.C. Jail, that task has become exponentially more difficult.

First, Mr. Blue – who suffers from asthma - remains incarcerated at the D.C. Jail, even though the United States Marshal declared that the facility does not meet the "minimum standards of confinement" as prescribed by federal law and policy. See https://www.usmarshals.gov/news/press-release/statement-us-marshals-service. Second, counsel's access to his client remains severely limited. Mr. Blue was placed into "quarantine" (without any prior warnings) for fifteen days, twice in the last month and a half. Each time the defendant goes into "quarantine," counsel is unable to conduct attorney-client visits with him, whether in person of by telephone or video. Even when Mr. Blue remains in general population, however, the D.C. Jail has only been utilizing one of the three floors designated for visitation (allegedly because of staffing and/or mechanical problems), which imposes a limit of four attorney visits at any one time. Counsel has arrived at the D.C. jail numerous times to find that the wait to visit his client is more than an hour and that sometimes, only one half of the first-floor visitation rooms are even open. The defendant has a Sixth Amendment right to counsel; the D.C. Jail's ever shifting conduct with respect to legal visitation is as flawed as its attention to hygiene in the facility.

Accordingly, in order to prepare for the defense of this case, we ask this Court to grant the defendant's motion for temporary release until such time as the COVID pandemic is sufficiently under control that the D.C. jail will permit sufficient attorney-client visits so that undersigned can fulfill his professional obligations.

**CONCLUSION**

For all of these reasons, the defense requests that this motion be granted and the defendant released to HISP with the conditions requested herein and any others that the Court deems necessary.

Respectfully submitted,

*Robert Feitel*

_____
Robert Feitel, Esquire
Law Office of Robert Feitel
1300 Pennsylvania Avenue, N.W.
#190-515
Washington, D.C. 20008
D.C. Bar No. 366673
202-255-6637 (cellular)
RF@RFeitelLaw.com

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing was sent via ECF, to Assistant United States Attorneys' Emory Cole, Caroline Burrell, and Stuart Allen, 555 4th Street N.W, Washington, DC 20001, this 6th day of September, 2022.

`

*Robert Feitel*
_____

Robert Feitel